UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TOMMY LEE HANDBAGS MANUFACTURING
LTD.,                                                       :

                        *Plaintiff*,                        :        12 Civ. 3638 (ALC) (DCF)

        -against-                                           :        **ORDER AND OPINION**

1948 CORPORATION, STONE & CO, STONE             :
MOUNTAIN ACCESSORIES, INC., STONE
MOUNTAIN USA, LLC, STONE MOUNTAIN              :
USA, CORP., ROSENTHAL & ROSENTHAL,
INC. AND KENNETH ORR                            :

                        *Defendants*.                      :

------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY  FILED
> DOC #:_____
> DATE FILED: 9-10-13

**ANDREW L. CARTER, United States District Judge:**

        Stone Mountain USA LLC ("SMU LLC") and Stone Mountain USA Corp. ("SMU

Corp.," and together with SMU LLC, "Stone II"), Rosenthal & Rosenthal ("R&R"), and Kenneth

Orr (collectively, "Moving Defendants") move separately to dismiss claims against them.  On

December 12, 2012, Tommy Lee Handbags ("Tommy Lee" or "TL"), a Hong-Kong based

supplier of ladies' handbags and accessories, filed its Third Amended Complaint ("Third Am.

Compl."), alleging that Stone Mountain Accessories ("SMA") and its wholly-owned subsidiary,

1948 Corporation ("1948," and together with SMA, "Stone I"), after receiving millions of dollars

in merchandise, engaged in a series of transactions with the Moving Defendants that allowed

Stone I to extinguish the heavy debts it owed to unsecured creditors like Tommy Lee.

        Tommy Lee brings suit against Stone I, Stone II and Kenneth Orr in his individual

capacity for account stated and goods sold and delivered (Claims 1 and 2) in the amount of

$1,468,963.33. Tommy Lee sues all Defendants [1] for fraudulent conveyance under New York Debtor & Creditor Law §§ 276, 276-a (Claim 3); constructive fraudulent conveyance under New York Debtor & Creditor Law §§ 274 (Claim 4) and bid rigging under the Sherman and Clayton antitrust acts, 15 U.S.C. § 1 and § 15(a), respectively (Claim 5).

BACKGROUND

I.   Tommy Lee's Allegations

Defendant Stone Mountain Accessories ("SMA"), a Georgia-owned corporation with principal place of business in New York. (Third Am. Compl. ¶¶ 5-6). Its wholly-owned subsidiary, 1948 Corporation ("1948") doing business as Stone & Co., is a New Jersey corporation doing business in New York and New Jersey. (Id. ¶¶ 2-4). SMA and 1948 (collectively, "Stone I") were in the business of designing, importing, selling and distributing ladies' accessories, small leather goods, wallets, and leather handbags, at least some of which were provided by Tommy Lee. Defendant Kenneth Orr was the chief executive officer of the Stone I entities. Defendant R&R was the factor for Stone I, loaning funds in exchange for accounts receivable.

Beginning in late 2011, Stone I began experiencing financial difficulties and sought possible partnership opportunities to no avail. Indeed, Tommy Lee alleges that around February

---

[1] Although Tommy Lee mentions Atanasio as the CEO of the Stone II Companies (see Third Am. Compl. ¶¶ 9, 10), Atanasio is no longer named as a defendant in Tommy Lee's Third Amended Complaint. That Tommy Lee named him as a defendant in its Second Amended Complaint is irrelevant as the latest complaint supersedes all previous complaints. International Controls Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (collecting cases); Toland v. Margulies, No. 93 Civ. 3549 (MBM), 1993 WL 473749, at *3 (S.D.N.Y. Nov. 10, 1993) (citing 3 W. Moore et al., Moore's Federal Practice ¶ 15.08[7] (2d ed. 1993).

2012, it was approached to partner with Stone I but declined the offer (Id. ¶¶ 36, 53).  When Orr realized that the Stone I entities were underwater , Tommy Lee alleges that he hatched a scheme with an old personal acquaintance and another R&R client, Charles Atanasio.  Atanasio, with Orr's assistance established Stone II in April 2012.  (Id. ¶¶ 33, 38-41).  According to the allegations, Orr and Atanasio intended these new corporations to continue the business of SMA and 1948 but without the financial liabilities the old entities had incurred.

Integral to this scheme was a "sham" public sale of Stone I's assets undertaken by R&R, purporting to act on its rights as secured creditor.  (Id. ¶¶45-56).  On April 27 and April 30, 2012, R&R placed ads in the New York Times and Crain's Classified, respectively, advertising the public sale of 1948 and SMA's assets to be held on Monday, May 7, 2012 at 10 AM. (Id. ¶¶ 45-50).  R&R "reserve[d] the right to adjourn, continue or cancel the auction without further notice."  On the day of the sale, no other bids were submitted and R&R acquired the Stone I assets with its starting credit bid of $300,000 (Id. ¶ 62).  On the same day as the sale and prior to the sale, SMA and 1948 entered Peaceful Possession Agreements with R&R.  (Id. ¶ 57).

The Court declines Tommy Lee's invitation to incorporate the arguments consider the amended complaint in a related case[2] in "assessing the plausible of or drawing reasonable inferences" of Tommy Lee's Complaint.  (TL Opp. at 10).  The plaintiff is the master of his complaint and to the extent, it does not adequately allege its claims, it may not turn to ride the coattails of another plaintiff's complaint for sufficiency.

DISCUSSION

---

[2] Another unsecured creditor raises similar allegations in its Amended Complaint against the Defendants.  See SungChang Interfashion Co., Ltd v. Stone Mountain Accessories, Inc., 12 Civ. 7280 (ALC) (DCF).

I.  Standard of Review

    A.  Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true, see Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).  However, the court need not accept allegations that are merely conclusions of law.  Kassner, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action").  Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Fernandez, 471 F.3d at 51 (internal quotation marks and citation omitted).

"In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (internal citations omitted).  To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." Id. at 275-76.  Moreover,

4

"when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce [the document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). Notably, a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. Chambers, 282 F.3d at 153.

II.  Alter Ego/Successor Liability (Claims 1 and 2)

Stone I and Orr do not challenge the account stated or goods delivered standards under New York law, but simply allege that they are not properly held liable. Orr argues that there is no basis to impose personal liability because he did not receive the goods and services delivered by Tommy Lee, but rather received them on behalf of the Stone I Companies. (Orr Mem. at 9). Stone II argues that Tommy Lee has not sufficiently alleged a basis for finding liability of the Stone I Companies under alter ego or successor liability theories.[3]

---

[3] Additionally, Stone II argues that Tommy Lee's successor liability theory was not presented in its Complaint and should not be considered. It is true that Tommy Lee never uses the phrase "successor liability" in connecting Stone II to Stone I. However, reading the complaint in the light most favorable to Tommy Lee, at least three times Tommy Lee intimates a successor relationship between Stone I and Stone II. (See Compl. ¶¶ 39 (alleging that Orr and Atanasio considered "ways to continue Stone I Companies' dealings. . . by acquiring Stone I Companies'

5

Tommy Lee's allegations that the court should pierce the corporate veil because the Stone I Companies were an alter ego to Orr and hold Stone II liable as a successor to Stone I are not based on direct liability. The question, then, is whether Tommy Lee has pleaded allegations that merit piercing the corporate veil.[4]

A. Choice of Law

Where jurisdiction is based on the diversity of parties, the Court must look to the choice-of-law rules of the forum state—New York—to determine which state's substantive law governs. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Beth Israel Med., Ctr. v. Horizon Blue Cross & Blue Shield of NJ, Inc., 448 F.3d 573, 582 (2d Cir. 2006). As the issues before this Court are (1) whether Orr is an alter ego of Stone I, (2) whether Stone II Defendants are alter egos of Stone I and (3) whether Stone II Defendants are liable as successors for Stone I's debts to Tommy Lee, as opposed to a dispute about whether Stone I Companies in fact owed the stated amount and received the alleged goods from Tommy Lee, the Court considers what law applies to Tommy Lee's claim that Orr and Stone II should be liable for Stone I's debts.

---

assets, but under the auspices of a different legal entity, trade name, and more importantly minus Stone I Companies' debts"), 41 (alleging that Atanasio with help from Orr formed the Stone II Companies "for the sole purpose of acquiring Stone I Companies' assets—inclusive of inventory"), 42 ("Stone II Companies conduct business out of the same 10 West 33rd Street, Suite 728, New York, NY 10001 address as Stone I Companies, carry on in the same line of business, and deal in Tommy Lee's sold but unpaid for inventory of goods delivered to Stone I Companies.")). Thus, consideration of a successor liability theory is proper.

[4] Under New York law, "alter ego" and "veil piercing" claims are synonymous. CSX Transp., Inc. v. Filco Carting Corp., No. 10–CV–1055 (NGG)(JMA), 2011 WL 2713487, at *3 n.1 (E.D.N.Y. July 11, 2011) (citing TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d 335, 339-40, 680 N.Y.S.2d 891, 703 N.E.2d 749 (1998)). The terms will be used interchangeably here.

Under New York's choice of law rules, a court first determines whether there is an actual conflict between the laws of the relevant jurisdictions. See Beth Israel, 448 F.3d at 582–83. An actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly.  Finance One Public Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005).  In the event of an actual conflict, the law of the jurisdiction having the greatest interest in the litigation will be applied. See Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993).  In the absence of actual conflict with the law of New York as the forum state and the law of the state with the greatest interest on the particular issue, New York law will be applied.  See Wall v. CSX Transp., Inc., 471 F.3d 410, 422 (2d Cir. 2006) ("As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law."). The "facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict."  Kalb, Voorhis & Co., 8 F.3d at 132; see, e.g., Soviet Pan Am Travel Effort v. Travel Comm., Inc., 756 F. Supp. 126, 131 (S.D.N.Y.1991) (applying New York law to underlying breach of contract claim and Maryland law to veil-piercing and successor liability claims).

Under New York law, the general rule is that the law of the state of incorporation determines when the corporate form will be disregarded.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); United Feature Syndicate, Inc. v. Miller, 216 F. Supp. 2d 198, 215 (S.D.N.Y. 2002); Soviet Pan Am, 756 F. Supp. at 131 ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.").  Only the incorporation of the relevant defendant matters for this analysis.  See Planet

7

Payment, Inc. v. Nova Information Systems, Inc., No. 07–cv–2520 (CBA)(RML), 2011 WL 1636921, at *7-8 (E.D.N.Y. March 31, 2011) (contacts of alleged predecessor organization not relevant to other parties' liability).

B. Piercing the Veil (Orr)

Although SMA is a Georgia corporation and 1948 is a New Jersey corporation, they are not Moving Defendants. Orr's liability is based on his contacts with the corporation. As the Chief Executive Officer of Stone I [who] maintained an office at 10 West 33rd Street in New York," the companies' principal place of business (Compl. ¶ 6, 10), I turn to New York to determine whether Tommy Lee's veil-piercing allegations are adequately pleaded as to Orr.

In New York, "[t]he concept of piercing the corporate veil is a limitation on the accepted principle that a corporation exists independently of its owners, as a separate legal entity." Matter of Morris v. New York State Dept. of Taxation and Fin., 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993); International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 292 (1948). Generally, piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris, 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157. To prevail on a claim veil-piercing claim, the plaintiff must prove both prongs of this test. See id.

The alleged wrongdoing must have "resulted in the plaintiff's injury," Morris, 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157. "Where the challenged complaint lacks this causative element—i.e., the use of domination to cause the injury, it should result in the dismissal of the corporate veil-piercing allegation." CSX Transp., Inc. v. Filco Carting Corp., No. 10–CV–1055 (NGG)(JMA), 2011 WL 2713487, at *3 (E.D.N.Y. July 11, 2011) (quoting

8

EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 513 (S.D.N.Y. May 19, 2005) (internal quotation marks and modifications omitted).  While this is "a heavy burden," TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d at 339–40, for the most part "piercing the corporate veil involves a fact laden inquiry, which is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." Holme v. Global Minerals and Metals Corp., No. 600232/08, 22 Misc.3d 1123(A), 880 N.Y.S.2d 873, 2009 WL 387034, at *7 (N.Y. Sup. 2009) (citations omitted).

Tommy Lee's does allege "upon information and belief that Orr took funds out of Stone I for his personal purpose and not for corporate purpose." (TL Compl. ¶ 30).  Tommy Lee further alleges that Orr had a personal relationship with the CEO of the newly-hatched Stone II Companies and finagled a management position in the enterprise (TL Compl. ¶ 33).  The complaint alleges that the Orr operated the same business, at the same physical location, with the same assets, and business operation first Stone I and then Stone II with Atanasio.  These allegations are sufficient to suggest domination and control.  See, e.g., Ledy v. Wilson, 38 A.D.3d 214, 215 (1st Dep't. 2007); Teachers Ins. Annuity Assn. of Am. v. Cohen's Fashion Opt. of 485 Lexington Ave., 45 A.D.3d 317, 319 (1st Dep't 2007).

The complaint further alleges Stone I is insolvent (TL Compl. at 2 ("Stone I Companies are believed to be defunct.")) and that Orr and Atanasio formed Stone II precisely to evade Stone I's creditors (TL Compl. ¶ 31 ("Kenneth Orr manipulated Stone I Companies to insolvency in order to avoid creditors, and created Stone II Companies as shield to creditors. . .")); ¶ 39).  If true, this scheme directly resulted in Tommy Lee's alleged injury that they are unable to collect for the merchandise it delivered to Stone I. Thus, these allegations satisfy the requirement that "such domination was used to commit a fraud or wrong against the plaintiff which resulted in

9

plaintiff's injury." For pleading purposes, the complaint is sufficient to withstand a motion to dismiss.

C.  Piercing the Veil (Stone II)

Because SMU Corp. is a New York corporation and SMU LLC is a Delaware corporation (Compl. ¶¶ 9-10), I turn to the law of those states in determining whether Tommy Lee's claim that Stone II is an alter ego of Stone I is properly pleaded.  Because SMU Corp. is a New York corporation and New York is the forum state, New York law applies.  As for SMU LLC, I will apply Delaware law only if there is an actual conflict with New York law.

The standard for New York alter ego claims is set forth above, supra at 11.  Under Delaware law, to prevail on an alter ego theory of liability, a plaintiff must show that the two corporations "operated as a single economic entity such that it would be inequitable. . . to uphold a legal distinction between them." Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1085 (D. Del. 1990) (citation omitted). Among the factors to be considered in determining whether a subsidiary and parent operate as a "single economic entity" are:

> "[W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder."

Harco Nat. Ins. Co. v. Green Farms. Inc., CIV. A. No. 1131, 1989 WL 110537, at *4, 15 Del. J. Corp. L. 1030, 1040 (Del. Ch. Sept. 19, 1989) (quoting United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1104 (D. Del. 1988)).

The notable difference is that a showing of fraud or wrongdoing is not necessary under an alter ego theory under Delaware law, Harco, 1989 WL 110537, at *5 ("The only departure from

10

the common law elements, however, is Chancery's willingness to provide a remedy for negligent or innocent misrepresentations."), but is required under New York law. Because these differences could result in a different outcome, Delaware law is applied to assess SMU LLC's liability and New York law will determine SMU Corp.'s liability as an alter ego.

Under either standard, Tommy Lee cannot allege that Stone II and Stone I are alter egos. Tommy Lee cannot allege that Stone II and Stone I operated as a "single economic entity" under Delaware law or that Stone II exercised complete dominion over Stone I under New York law when it alleges that Stone II was not established until April 11, 2012 (¶10), a month after it claims that Stone I was already insolvent in March 2012 (¶ 37). At best, Tommy Lee alleges that Stone II was formed with the sole purpose to succeed Stone I but this claim only sets forth a basis for successor liability, discussed infra. Because Tommy Lee does not allege the contemporaneous existence of Stone I and Stone II, it cannot adequately allege that Stone II is an alter ego of Stone I and this basis for liability is dismissed.

D. Stone II's Successor Liability

As with piercing the veil, New York courts determining successor liability have similarly concluded that the state with the most interest is the defendant corporation's place of incorporation. See Planet Payment, Inc. v. Nova Information Systems, Inc., No. 07–cv–2520 (CBA)(RML), 2011 WL 1636921, at *7 (E.D.N.Y. March 31, 2011) (finding defendant's place of incorporation dispositive for successor liability choice of law analysis); Soviet Pan Am, 756 F. Supp. at 131 (finding that a successor liability claim, like a veil-piercing claim, implicates questions of corporate liability for the acts of others, and that the state of incorporation has the greater interest in such claims). Because SMU LLC is a Delaware corporation and SMU Corp. is a New York corporation, I turn to the law of those states in determining whether successor

11

liability is properly pleaded.  As SMU Corp. is a New York corporation and New York is the

forum state, New York law applies to the successor liability claim for SMU Corp. regardless.  As

for SMU LLC, I will apply Delaware law if there is an actual conflict with New York law.

Both New York and Delaware recognize that when one company sells or transfers all of

its assets to another company, the acquiring company generally does not become liable for the

debts or liabilities of the seller/transferor.  See, e.g., Cargo Partner AG v. Albatrans, Inc., 352

F.3d 41, 45 (2d Cir. 2003).  Both Delaware and New York also recognize four exceptions to this

rule: (1) where the buyer expressly assumed the debt at issue; (2) where the transaction was

undertaken to defraud creditors; (3) where the transaction constitutes a *de facto* merger; or (4)

where the successor is a mere continuation of the predecessor. Id.; Schumacher v. Richards

Shear Co., Inc., 59 N.Y.2d 239, 245, 451 N.E.2d 195, 19, 464 N.Y.S.2d 437, 440 (N.Y. 1983);

Ross v. Desa Holdings Corp., No. 05C–05–013, 2008 WL 4899226, at *4 (Del. Super. Ct.

Sept.30, 2008).

Tommy Lee does not allege that Orr personally accepted responsibility for payment of

the shipments he received on behalf of Stone I so there is no basis for direct liability for the

owed.  Thus, only the *de facto* merger, mere continuation and fraud exceptions are possibly

applicable in this case. (Am. Compl. at ¶ 55.)

       1.   De Facto Merger Exception

"The elements necessary to create a *de facto* merger under Delaware law are the

following: (1) one corporation transfers all of its assets to another corporation; (2) payment is

made in stock, issued by the transferee directly to the shareholders of the transferring

corporation; and (3) in exchange for their stock in that corporation, the transferee agreeing to

assume all the debts and liabilities of the transferor." Magnolia's at Bethany, LLC v. Artesian

Consulting Engineers Inc., No. S11 C–04–013, 2011 WL 4826106, at *3 (Del. Super. Ct. Sept.

19, 2011).

Under New York law, "[t]he hallmarks of a *de facto* merger include: continuity of

ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as

possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted

continuation of the business of the acquired corporation; and continuity of management,

personnel, physical location, assets and general business operation." Fitzgerald v. Fahnestock &

Co., 286 A.D.2d 573, 574, 730 N.Y.S.2d 70 (1st Dep't 2001); New York v. Nat'l Service Indus.,

Inc., 460 F.3d 201, 211 (2d Cir.2006) (citing Cargo Partner, 352 F.3d at 46).

Accordingly, to state a claim for successor liability based on a *de facto* merger theory in a

breach of contract case under either New York or Delaware law, a plaintiff must allege

continuity of ownership between the selling and acquiring corporations. Courts in New York and

in Delaware, however, interpret this element differently.  New York courts require only an

allegation of shareholders of the selling corporation hold even an indirect interest in the assets.

See, e.g., In re New York City Asbestos Litig., 15 A.D.3d 254, 256, 789 N.Y.S.2d 484 (N.Y. 1st

Dep't 2005) ("The first criterion, continuity of ownership, exists where the shareholders of the

predecessor corporation become direct or indirect shareholders of the successor corporation as

the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets

transaction."); Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 104–105 (S.D.N.Y.

2002).

In contrast, under Delaware law, the "continuity of ownership" element is only met if

shareholders of the predecessor corporation acquire a *direct* ownership interest in the successor

corporation. See, e.g., Magnolia's, 2011 WL 4826106, at *3 (for *de facto* merger, shares in the

13

transferee corporation must be issued directly to shareholders of the transferring corporation);
Hayden Capital USA, LLC v. Northstar Agri Industries, LLC, No. 11 CIV. 594 (DAB), 2012
WL 1449257, at *5 (S.D.N.Y. Apr. 23, 2012) (applying Delaware law); Fehl v. S.W.C. Corp.,
433 F. Supp. 939, 947 (D. Del. 1977) ("Only in a few cases, where the consideration passed
directly to the transferor's stockholders without coming into possession of the transferor
corporation, has a *de facto* merger been found.").

Because different outcomes could possibly result depending on the law applied, there is
an actual conflict and the law of the state with the greatest interest should apply.  As to SMU
Corp, that state is Delaware, the state of incorporation, and thus Delaware law will apply.  As to
SMU LLC, New York law will apply.

The scheme that Tommy Lee alleges involves using R&R as a go-between to stage a
public sale, facilitate the surrender of Stone I assets and subsequently allow Stone II to purchase
those assets.  Thus, even if accepted as true, the alleged ownership interest of Orr or Stone I in
Stone II's assets is indirect ownership and is insufficient to allege continuity of ownership under
Delaware law.  Therefore, the claims against SMU LLC for successor liability under a de facto
merger theory must be dismissed.

Under New York law, however, indirect ownership is sufficient.  What is more, "what the
Plaintiff needs to show to ultimately prevail on a *de facto* merger claim and what the Plaintiff
must plead to state a claim are two separate inquiries." Ortiz v. Green Bull, Inc., No. 10–CV–
3747 (ADS)(ETB), 2011 WL 5554522, at *8 (E.D.N.Y. Nov.14, 2011).  Tommy Lee alleges that
Orr and his son received executive positions in Stone II.  Orr was the CEO of Stone I and now is
president of Stone II and his longtime friend, Charles Atanasio is CEO.  Although the ownership
relationship is not clear at this time, Tommy Lee has not "concede[d] that it lack[ed] 'any factual

14

basis,' as required by Fed. R. Civ. P. 11(b)(3), on which to plead continuity of ownership between [the predecessor corporation] and [the successor corporation]." Ortiz, 2011 WL 5554522, at *8 (quoting, and distinguishing, Cargo Partner, 352 F.3d at 46).  Instead, Tommy Lee's allegations of Orr's continued involvement in Stone II suggest that the peaceful possession of Stone I and sale of its assets was something more than an arms-length asset sale.

Tommy Lee also alleges that Stone I is defunct and became insolvent as of March 2012 and began a new entity at the same location in the same line of business precisely to avoid liability.  Therefore, under New York law, Tommy Lee states a claim for de facto merger exception to establish successor liability as to SMU Corp.

### 2.  Mere Continuation Exception

In New York, "[a] continuation envisions a common identity of directors [and] stockholders and the existence of only one corporation at the completion of the transfer." Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07 Civ. 489, 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007) (internal quotation marks omitted); Ladjevardian v. Laidlaw–Coggeshall, Inc., 431 F. Supp. 834, 839 (S.D.N.Y. 1977).  Similarly, in Delaware, the primary elements of continuation include the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer.  Magnolia's, 2011 WL 4826106, at *3 (Del. Super. 2011).  Notably, both states also require narrow construal of the mere continuation exception such that it is only available where "it is not simply the business of the original corporation which continues, but the corporate entity itself." Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626-27 (S.D.N.Y. Mar 07, 2007) (quoting Ladjevardian, 431 F. Supp. at 839); Magnolia's, 2011 WL 4826106, at *3 (quoting Fountain v. Colonial Chevrolet Co., 1988 WL 40019, at *7 (Del. Super. Ct. April 13,

1988).  Accordingly, there is no actual conflict between Delaware and New York law on the mere continuation exception, and I will apply New York law.

As discussed above, the Orr's continued presence as president of Stone II suggests that the corporate entity continued beyond the mere sale of assets as of March 2012.  Even though Tommy Lee has not alleged formal dissolution, this defect is not detrimental as "the mere continuation exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors [so that] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." Societe Anonyme, 2007 WL 3253592, at *6 (citation and internal quotation marks omitted) (modification added).  Tommy Lee also alleges that Stone I is defunct (Compl. at 2) and that Stone II is in the same line of business as Stone I operating from the same location.  These allegations are enough to assert a theory of mere continuation to survive Moving Defendants' motions to dismiss. Societe Anonyme, 2007 WL 3253592, at *5 (finding that plaintiff sufficiently alleged mere continuation where predecessor and successor company had shared office space, shared an address, shared employees and management, and where it was logical to infer that the successor company was created to avoid contractual liability).

### 3.  Intent to Defraud Creditors

Finally, Tommy Lee's Third Amended Complaint satisfies the exception allowing successor liability where a transaction is conducted with intent to defraud creditors.  The allegations of fraud must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).  Tommy Lee alleges with adequate specificity the facts of the alleged fraud:  (a) Stone II was formed by Orr and Atanasio to frustrate and evade its creditors (Compl. ¶¶ 13, 31, 38-41) and that the public

16

sale was effectuated by a common creditor, R&R, to legitimate the scheme (Compl. ¶¶ 35, 45-48, 64-66). Therefore, the fraud exception applies and defeats Defendants' motion to dismiss the successor liability claims.

III. Fraudulent Conveyance Claims (Claims 3 and 4)

Tommy Lee assert claims against Defendants for constructive fraudulent conveyances under New York Debtor and Creditor Law ("N.Y. DCL") §§ 273 and 274 and actual fraudulent conveyances under N.Y. DCL § 276 and seeks to set aside the conveyance to R&R. Defendants contend that Tommy Lee has not adequately pleaded its claim because at most the conveyance to R&R was a preference between creditors, not fraudulent conveyance (Stone Mountain Mot. 13-18) and that Tommy Lee lacks standing to assert a fraudulent conveyance claim because it has no equity stake in the inventory (R&R Mot. 9-13; Orr Mot. 16-19).

As an initial matter, contrary to R&R's primary argument (R&R Mot. 7-9), the peaceful possession agreement and actual value of inventory are not incorporated by reference. The Second Circuit, noting occasional misinterpretation, has clarified that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (considering referenced agreement on motion to dismiss because complaint "relies heavily upon its terms and effect [and] therefore, the Agreement is "integral" to the complaint").

Tommy Lee mentions the Peaceful Possession Agreement as being signed the day on the morning of and prior to the public auction and as "purportedly transferr[ing] possession of Stone I Companies' secured collateral-inventory and other tangible and intangible assets, to secured

party creditor Defendant [R&R]" (Am. Compl. ¶ 57), but there is no reliance on the PPA's terms and effects. Thus, the PPA and the "actual" value of the inventory—a number determined by R&R—are not deemed incorporated by reference. Thus, the Court finds that R&R has presented extrinsic evidence on its motion to dismiss.

A.  Discretion to Convert to Summary Judgment

"Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988); Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). Thus, while a court must convert a motion to dismiss for failure to state a cliam into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," Fed.R.Civ.P. 12(d), conversion is not required if the court disregards the extrinsic material. Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006) (matters outside the pleadings presented to the court were "excluded" within meaning of 12(d) by the district court's explicit refusal to consider the outside materials).

Here, R&R has presented extrinsic evidence challenging the fraudulent conveyance claims, which would require conversion to a summary judgment motion. The Court declines to convert Defendant R&R's motion into one for summary judgment at this time given the minimal discovery to date and the fact that the entity bringing forward evidence that Tommy Lee lacks standing is one who is alleged to have facilitated and benefitted in the fraudulent conveyance. Therefore, I will only consider the complaint and any documents incorporated therein.

B.  Failure to State a Fraudulent Conveyance Claim

Tommy Lee brings claims for actual fraudulent conveyance, § 276, and constructive

fraudulent conveyance under N.Y. DCL §§ 273 and 274.  Under New York law, a "creditor's

remedy in a fraudulent conveyance action is limited to reaching the property which would have

been available to satisfy the judgment had there been no conveyance." Chemtex, LLC v. St.

Anthony Enterprises, Inc., 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007) (quoting Marine Midland

Bank v. Murkoff, 120 A.D.2d 122, 508 N.Y.S.2d 17, 25 (N.Y. App. 2d Dep't 1986)).

1.  Actual Fraudulent Conveyance

Tommy Lee's actual fraudulent conveyance claims are brought pursuant to N.Y. DCL §

276, which provides:

> Every conveyance made and every obligation incurred with *actual intent,* as
> distinguished from intent presumed in law, to hinder, delay, or defraud either
> present or future creditors, is fraudulent as to both present and future creditors.

N.Y. DCL § 276 (McKinney 2003) (emphasis added).

To survive a motion to dismiss on a § 276 claim, a plaintiff must allege that a defendant

acted with actual intent to hinder, delay, or defraud creditors and  must plead its allegations with

particularity as required by Fed.R.Civ.P. 9(b).  See Atlanta Shipping Corp., Inc. v. Chem.

Bank, 818 F.2d 240, 251 (2d Cir. 1987) ("Though DCL § 276 is triggered by an actual intent to

hinder, delay, or defraud, all three means of damaging creditors are within a general category

that the statute categorizes as "fraudulent.").  To prove actual fraud, a creditor must show intent

to defraud on the part of the transferor.  HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n. 5

(2d Cir. 1995).

"Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the

pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so

commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." In re Sharp Intern. Corp., 403 F.3d 43, 56 (2d Cir. 2005) (quoting Wall St. Assocs. v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999). These "badges of fraud" include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; ... and retention of control of the property by the transferor after the conveyance." Id.; see also HBE Leasing Corp. v. Frank, 48 F.3d 623, 639 (2d Cir. 1995) ("Actual fraudulent intent ... may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction."); Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003).  Of course, the flip side of these badges of fraud is that their absence—or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control—would constitute evidence that there was no intent to defraud.  Lippe, 249 F. Supp. 2d at 375.

Tommy Lee has alleged several of these badges of fraud:  the personal relationship between Orr and Atanasio (CEO of the Stone II entities); common relationship with R&R; inadequacy of the consideration; secretive transaction; unusual timing of the transaction (the same day as the public auction).  Based on these allegations, it cannot be said that Tommy Lee does not allege actual fraudulent conveyance.

### 2.  Constructive Fraudulence

To state a claim under N.Y. DCL §§ 273 and 274 for constructive fraudulent conveyance, the plaintiff must allege that the defendant (1) made a conveyance; (2) without fair consideration; (3) by a person who is insolvent or who becomes insolvent as a consequence of the transfer.

Zanani v. Meisels, 78 A.D.3d 823, 824, 910 N.Y.S.2d 533 (2d Dep't 2010); see Nirvana Rest.

Inc. v. Paul's Landmark, Inc., 337 B.R. 495, 501 (Bankr. S.D.N.Y. 2006). "[T]he concept of fair

consideration has two components—the exchange of fair value and good faith—and both are

required." Lippe, 249 F. Supp. 2d at 376-77; Petersen v. Vallenzano, 849 F. Supp. 228, 231

(S.D.N.Y. 1994). For purposes of a constructive fraudulent conveyance claim, the "good faith"

at issue is the good faith of the transferee, as opposed to, in the case of actual fraud under § 276,

the good faith of the transferor. Lippe, 249 F. Supp. 2d at 377.

Tommy Lee's complaint satisfies the first requirement, alleging a conveyance from Stone

I to R&R. Tommy Lee also alleges that the conveyance was without fair consideration as not

commercially reasonable (Third Am. Compl. ¶¶ 90-100)—allegations that there was no

exchange of fair value—and further alleges that the conveyance was based on a low-ball credit

bid and sham sale by R&R (Id. ¶¶ 62-65). Lastly, Tommy Lee alleges that Stone I was insolvent

within the meaning of section 273 at the time of the transfer (Id. ¶¶ 35-40). Thus it has

sufficiently alleged the elements of constructive fraudulent conveyance.

However, regardless of whether Tommy Lee adequately pleads a claim, if it lacks

standing to bring a claim of fraudulent conveyance, the claims must nonetheless be dismissed.

C.  Standing for Fraudulent Conveyance Claims

On a motion to dismiss, courts limit the standing inquiry to whether the plaintiff alleging

fraudulent conveyance was a creditor of the transferor. N.Y. DCL § 270 (" 'Creditor' is a person

having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or

contingent"); Harris v. Coleman, 863 F. Supp. 2d 336, 341 (S.D.N.Y. 2012) ("In order to bring a

fraudulent conveyance claim, the plaintiff must therefore be a creditor of the transferor [as] [n]on

creditors can find no relief in a statute whose object . . . is to enable a creditor to obtain his due

despite efforts on the part of a debtor to elude payment.") (internal quotation marks omitted); Friedman v. Wahrsager, 848 F. Supp. 2d 278, 289-91 (E.D.N.Y. 2012) (on motion to dismiss, plaintiff had standing to assert fraudulent conveyance where it stood in the shoes of guarantors, who were "creditors" as defined in DCL § 270); Lippe v. Bairnco Corp., 230 B.R. 906, 914 - 915 (S.D.N.Y. 1999) (same).

Tommy Lee has adequately alleged that it is a creditor of the Stone I entities within the meaning of the N.Y. DCL § 270 because it alleges that it is owed for the goods that were delivered to the Stone I Entities but for which it never received payment.  (Am. Compl. ¶¶ 22-23, 25-26, 59).  Thus, Tommy Lee meets the standing threshold for its fraudulent conveyance claims at this stage.

Having adequately pleaded a claim for fraudulent conveyance and its standing as a creditor, Tommy Lee's fraudulent conveyance claims survive dismissal and the Moving Defendants' motions to dismiss are denied on Claims 3 and 4.

IV. Antitrust Bid Rigging (Claim 5)

All Moving Defendants challenge Tommy Lee's antitrust claim for bid rigging, arguing that Tommy Lee lacks standing to bring a private action under the Sherman and Clayton Act. The Moving Defendants further argue that Tommy Lee has not alleged an antitrust injury, that is, injury to the competition as a whole as contemplated by the antitrust laws.  Tommy Lee's rebuts this challenge with a claim that bid rigging is per se illegal and therefore it has met that its burden.

Section 4 of the Clayton Act establishes a private right of action for violations of the federal antitrust laws, and  permits "[a]ny person who [is] injured in his business or property by reason of anything forbidden in the antitrust laws" to sue for treble damages for those injuries. 15

22

U.S.C. § 15. However, "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." Associated General Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 534, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (internal quotation marks omitted). Claims outside of that purview will fail for lack of "antitrust standing." See Daniel v. American Bd. of Emergency Med., 428 F.3d 408, 436–38 (2d Cir. 2005).

"[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement, we must dismiss it as a matter of law." Gatt Communications, Inc. v. PMC Associates, L.L.C., 711 F.3d 68, 75 (2d Cir. 2013) (quoting NicSand, Inc. v. 3M Co., 507 F.3d 442, 450 (6th Cir. 2007) (en banc)); Daniel, 428 F.3d at 437 ("[I]n antitrust actions, the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them, can limit the right to sue.") (internal quotation marks omitted). The doctrine of antitrust standing prevents private plaintiffs from "recover[ing] damages under § 4 … merely by showing injury causally linked to an illegal presence in the market." Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (internal quotation marks omitted). Thus, even when alleging per se antitrust violations such as bid rigging, the Second Circuit "require[s] a private antitrust plaintiff plausibly to allege . . . that it suffered a special kind of 'antitrust injury,' and . . . that it is a suitable plaintiff to pursue the alleged antitrust violations and thus is an 'efficient enforcer' of the antitrust laws" to establish antitrust standing. Gatt Communications, 711 F.3d at 76.

A.  Antitrust Injury

The antitrust injury requirement for a private antitrust action "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in

the first place.'" <u>Atlantic Richfield</u>, 495 U.S. at 342, 110 S.Ct. 1884.  A plaintiff alleging

antitrust injury must first allege that it has been injured by an illegal anticompetitive practice and

"identify[ ] the practice complained of and the reasons such a practice is or might be

anticompetitive." <u>Gatt Communications</u>, 711 F.3d at 76 (quoting <u>Port Dock & Stone Corp. v.

Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121, 126–27 (2d Cir. 2007)).  Next, the Court identifies the

"actual injury the plaintiff alleges." <u>Id.</u>  Finally, we consider the first two factors in conjunction,

that is, how the "anticompetitive effect of the specific practice at issue" relates to "the actual

injury the plaintiff alleges." <u>Id.</u> (internal citations omitted).  This final step requires a showing

that the injury is "of the type the antitrust laws were intended to prevent and that flows from that

which makes [or might make] defendants' acts unlawful." <u>Id.</u> (quoting <u>Daniel</u>, 428 F.3d at 438)

(internal quotation marks omitted).

    B.  Efficient Enforcer

    Besides antitrust injury, to establish antitrust standing, a prospective plaintiff must also

sufficiently allege that it is an "efficient enforcer" of the antitrust laws.  To determine whether a

putative antitrust plaintiff is an "efficient enforcer" of the antitrust laws, we examine primarily

the following factors:

> (1) the directness or indirectness of the asserted injury; (2) the existence of an
> identifiable class of persons whose self-interest would normally motivate them to
> vindicate the public interest in antitrust enforcement; (3) the speculativeness of
> the alleged injury; and (4) the difficulty of identifying damages and apportioning
> them among direct and indirect victims so as to avoid duplicative recoveries.

<u>Gatt Communications</u>, 711 F.3d at 78 (quoting <u>Paycom</u>, 467 F.3d at 290–91); see also <u>Triple M

Roofing Corp. v. Tremco, Inc.</u>, 753 F.2d 242, 247 (2d Cir. 1985).

C.  Application

Tommy Lee's Complaint fails both elements of antitrust standing.  As an initial matter, it is unclear that Tommy Lee has alleged a viable bid-rigging scheme.  But assuming that it has adequately alleged bid-rigging, Tommy Lee does not satisfy the elements of an antitrust injury.

Tommy Lee argues that it was injured by an alleged bid-rigging scheme carried out by Orr, Stone II and R&R.  The bid-rigging allegedly occurred because R&R failed to sufficiently advertise the public sale; the Defendants entered a non-disclosure agreement by which they would not discuss the impending sale with anyone (TL Compl. ¶ 54); and R&R entered a low bid and was unopposed because of the limited publicity.[5]

But Tommy Lee does not allege the reasons why the so-called bid rigging was anticompetitive.  Tommy Lee does not allege that would-be disinterested bidders were somehow impeded from attending the public auction.  To the contrary, Tommy Lee alleges that Orr was "afraid that a competitor, 'Li & Fung Handbag,' might appear at the auction and essentially 'wipe out' Stone I Companies by purchasing the assets at the auction" (TL Compl. ¶ 55).  That Orr voiced this concern does not amount to a violation of antitrust laws.  If anything, it proves that the Defendants were not in control of the auction and thus it was not anticompetitive.

Lastly, Tommy Lee fails to allege the actual injury it suffered on account of the anticompetitive practice.  The only injury it alleges—the unavailability of funds to pay Stone I's

---

[5] If the injury is that Tommy Lee was deprived of the chance to bid at auction, Tommy Lee does not allege that such notice would have made a difference (i.e., that it would have bid for the Stone I assets).  This omission is especially damning in light of the fact that Tommy Lee admits that it had been approached by Stone I when during Stone's hard times. TL Compl. ¶¶ 35, 36, 53 ("Plaintiff Tommy Lee was not only a creditor of Stone I Companies but was among the prospective parties with whom a joint venture with Stone Mountain Accessories and 1948 Corporation had been pitched, sometime in 2011.").

owing debts—is a private injury that does not correspond to the rationale for finding a violation of the antitrust laws.  These allegations do not reveal any injury to the marketplace, beyond injury to Tommy Lee as an unpaid creditor.  Thus, there is no antitrust injury.

Even if Tommy Lee had alleged antitrust injury, Tommy Lee is not an "efficient enforcer" of the antitrust laws and therefore lacks antitrust standing on that basis as well. *See, e.g., Daniel,* 428 F.3d at 443 ("A showing of antitrust injury is necessary, but not always sufficient, to establish [antitrust] standing."  The alleged harm is indirect; there is no basis for Tommy Lee to vindicate the public interest, the injury as discussed above is highly speculative and it is difficult to calculate damages due to the Defendants' alleged bid-rigging.[6]  For these reasons, Tommy Lee is not an efficient enforcer of the antitrust laws.  Without an antitrust injury or failing to be an efficient enforcer of the antitrust laws Tommy Lee lacks antitrust standing and its claim for antitrust bid rigging is necessarily dismissed.

## CONCLUSION

Lastly, I will briefly address Stone II's contention that the revival of claims in the Third Amended Complaint is evidence of harassment.  Tommy Lee apparently dismissed the complaint against Stone II in order to secure payment for one of the outstanding shipments.  While unorthodox, renaming a previously-dismissed defendant is not improper.  Stone II Companies could easily have avoided this situation by requiring dismissal of the charges with prejudice.  As it stands, the case may proceed against Stone II as set forth in this Order.

In summary, the Motions to Dismiss (Dkt. Nos. 31, 35, 38) are adjudicated as follows:

---

[6] While Tommy Lee has alleged the amount of the debt that Stone I owes, it is difficult to allocate how much of their loss occurred because of the alleged-bid-rigging rather than because of a judgment deficiency because Stone I rightfully satisfied the debt it owed to R&R as a secured creditor.

- Orr's motion to dismiss the alter ego claim is DENIED;

- Stone II's (SMU LLC and SMU Corp.) motion to dismiss the alter ego claim is GRANTED;

- SMU Corp.'s motion to dismiss successor liability claims is DENIED and Tommy Lee may proceed with discovery on de facto merger, mere continuation and fraud theories;

- SMU LLC's motion to dismiss the successor liability claims is GRANTED IN PART and DENIED IN PART and Tommy Lee may proceed with discovery on the mere continuation and fraud theories;

- The motions to dismiss the fraudulent conveyance claims (Claims 3 and 4) are DENIED;

- The motions to dismiss the antitrust claims (Claim 5) are GRANTED.

SO ORDERED.

Dated:      September 9, 2013
            New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge